UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CASE NO:

**NICOLE GUAN,**
individually and on behalf of all
others similarly situated,

**CLASS ACTION**

Plaintiff,

**JURY TRIAL DEMANDED**

v.

**EBF EYE PRO LLC,**

Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Nicole Guan brings this class action against Defendant EBF EYE PRO LLC and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA").

2. To promote its dental services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

3. Defendant owns and/or operates Austin Eye Professionals at Leander.

1

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

6. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant made calls to Plaintiff who resides in this District in violation of the TCPA and because of Defendant's contacts with Texas.

## PARTIES

7. Plaintiff is a natural person who, at all times relevant to this action, was a resident of the Williamson County, Texas.

8. Defendant is a Texas Company whose principal office is located in Houston, Texas.

## FACTS

9. On or about February 19, 2025, Plaintiff responded to Defendant's visit reminder text message, sent to Plaintiff's cellular telephone number ending in 4884 ("4884 Number"), with a "stop" instruction as depicted below:



10.     Defendant immediately responded that Plaintiff had been unsubscribed from receiving Defendant's "recall" text messages.



11.     Notwithstanding, on September 4, 2025 and September 9, 2025, Defendant sent the following text messages to Plaintiff:



12. The purpose of all of the messages sent by Defendant to Plaintiff was to encourage Plaintiff to schedule an appointment with Defendant.

13. Plaintiff reasonably revoked her consent to receive calls from Defendant.

14. Plaintiff never opted back in to receive calls from Defendant after her first "stop" request on February 19, 2025

15. Defendant also called Plaintiff on October 25, 2025 from 512-980-6700 and July 1, 2025 from 512-980-6700.

16. Given Defendant's use of an automated text messaging platform, as reflected by the auto-reply opt-out confirmations Plaintiff received, depicted above, Defendant had the ability to immediately opt Plaintiff out of further communications but chose not to do so. Accordingly, it was unreasonable for Defendant to continue texting Plaintiff given its

ability to immediately opt Plaintiff out and its representation that Plaintiff had been opted out of further communications.

17.     As demonstrated by the above screenshots, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's services, i.e., selling Plaintiff and the Class Members eye examinations and related goods/services.

18.     Defendant's text messages were an attempt to solicit Plaintiff's and Class Members' business and patronage.

19.     Specifically, the purpose of Defendant's calls were an attempt to solicit Plaintiff's and Class Members' business and patronage.

20.     Had Plaintiff or any Class Member responded to Defendant's solicitations by scheduling an appointment, Defendant would have charged them for the visit.

21.     Plaintiff did not have an ongoing treatment relationship with Defendant and did not require Defendant's services. Rather, Defendant was attempting to sell a new service for which Plaintiff would have to pay.

22.     All of Defendant's text messages were a pretext for the sale of goods or services and, on information and belief, Defendant sent the texts to encourage Plaintiff and the Class Members to purchase Defendant's services.

23.     Defendant's calls were not purely informational, and Defendant stood to gain financially from transactions with Plaintiff and the Class Members had they acted on the messages.

24. Defendant's calls were not related to the specific healthcare needs of Plaintiff as reflected by the fact that Plaintiff wrote back "stop" but Defendant continued to message Plaintiff.

25. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

26. Defendant sent at least two phone call solicitations after Plaintiff's initial opt-out request.

27. Plaintiff is the regular user of the telephone number that received the above telephonic calls.

28. Plaintiff utilizes the cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

29. Plaintiff's cellular telephone number has been listed on the National Do Not Call Registry since August 20, 2022.

30. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

31. Defendant's lack of procedures has resulted in Defendant failing to (1) honor opt-out requests within a reasonable period of time that does not exceed 30 days; (3) train its personnel engaged in telemarketing in the use and maintenance of a do-not-call list; (4)

place consumers who text Defendant with "stop" instructions promptly on an internal do-not-call list; and (3) maintain a record of consumers' do-not-call "stop" text requests.

32. Defendant did not maintain procedures for handling and processing text message opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to make calls to Plaintiff.

33. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

34. Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

35. Defendant's unwanted and unsolicited calls caused Plaintiff and the Class Members actual harm, including invasion of privacy, intrusion upon seclusion, and intrusion into the peace and quiet in a realm that is private and personal to Plaintiff and the Class members.

## CLASS ALLEGATIONS

### PROPOSED CLASS

36. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

37. Plaintiff brings this case on behalf of the Classes defined as follows:

> **INTERNAL DO NOT CALL CLASS: All persons within the United States who, within the four years prior to the filing of this action, (1) received more than one text message and/or phone call within any 12-month period, (2) reminding and/or encouraging the scheduling of an appointment with Defendant, (3) to said person's residential cellular telephone number, (4) after making a request to Defendant to not receive future calls or communications by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**
>
> **DNC Class: All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, (1) were sent more than one text message within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) reminding and/or encouraging the scheduling of an appointment with Defendant; (4) to said person's residential cellular telephone number; (5) after making a request to Defendant to not receive further calls or communications by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

38. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

39. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

40. Upon information and belief, Defendant has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

41. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

42. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

   a) Whether Defendant violated 47 C.F.R. § 64.1200(d);

   b) Whether Defendant's conduct was knowing and willful;

   c) Whether Defendant adhered to requests by class members to stop sending calls to their telephone numbers;

   d) Whether Defendant keeps records of text recipients who revoked consent to receive calls.

   e) Whether Defendant has any written policies for maintaining an internal do not call list.

   f) Whether Defendant violated the privacy rights of Plaintiff and members

of the class;

g) Whether Defendant is liable for damages, and the amount of such damages; and

h) Whether Defendant should be enjoined from such conduct in the future.

43. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

44. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

45. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

46. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful

conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

48. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel

engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

50. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity that, like Defendant, sends calls to wireless telephone numbers.

51. Plaintiff and the Class Members are residential telephone subscribers who received more than one telemarketing call from Defendant, who has failed to implement adequate procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests within a reasonable period of time that does not exceed 30 days, and its lack of a written policy for maintaining an internal do-not-call list.

52. Plaintiff and the Class members made requests to Defendant not to receive calls from Defendant.

53. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

54. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

55. Defendant failed to honor Plaintiff's and the Class members' opt-out requests within a reasonable period time.

56. In violation of section 64.1200(d)(1), Defendant does not have written policy for maintaining a do-not-call list.

57. In violation of section 64.1200(d)(2), Defendant does not train its personnel engaged in telemarketing on the existence and use of a do-not-call-list with respect to inbound "stop" text messages like those sent by Plaintiff and the Class members. Defendant's lack of adequate training resulted in Plaintiff and the Class members receiving text messages after they texted Defendant with "stop" or similar opt-out instructions.

58. In violation of section 64.1200(d)(3), Defendant failed to record Plaintiff's and the Class Members' opt-out requests on a do-not-call list, and failed to honor Plaintiff's and the Class Members' do-not-call requests within a reasonable time.

59. In violation of section 64.1200(d)(6), Defendant does not maintain a do-not-call list consisting of consumers' inbound "stop" text message requests to not receive text messages, and therefore does not honor those requests within a reasonable period of time.

60. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

## COUNT II
### Violations of 47 U.S.C. § 227(c) and 64.1200(c)
### (On Behalf of Plaintiff and the DNC Class)

61. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

62. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

63. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

64. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

65. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a

listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

66. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than call in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

67. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made in violation of the TCPA, and to otherwise protect the interests of the Class;

e) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: December 6, 2025

        Respectfully submitted,

        By: */s/ Manuel Hiraldo*
        **HIRALDO P.A.**
        Manuel S. Hiraldo
        Florida Bar No. 030380
        101 NE 3rd Avenue, Suite 1500
        Ft. Lauderdale, Florida 33301
        Email: mhiraldo@hiraldolaw.com
        Telephone: 954.400.4713
        **LEAD COUNSEL for Plaintiff**

        Michael Eisenband
        Eisenband Law, P.A.
        515 E Las Olas Blvd, Ste 1300
        Fort Lauderdale, FL 33301
        MEisenband@Eisenbandlaw.com
        954-732-2792

        Attorney for Plaintiff